1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PLATTE RIVER INSURANCE                    No.  2:14-cv-1666-WBS-EFB
     COMPANY, a Nebraska corporation,
12
                      Plaintiff,
13                                             ORDER AND FINDINGS AND
            v.                                 RECOMMENDATIONS
14
     PREMIER POWER RENEWABLE
15   ENERGY, INC., a California corporation;
     DEAN RICHARDS MARKS, an
16   individual; and SARILEE MARKS, an
     individual,
17
                      Defendants.
18

19
            This matter came before the court for hearing on plaintiff Platte River Insurance

20
     Company's application for writs of attachment or alternatively a temporary protective order to

21
     secure $1,011,121.00 from defendants Premier Power Renewable Energy, Inc., Dean Richards

22
     Marks, and Sarilee Marks' property.  ECF No. 18.  Attorney James Curran appeared on behalf of

23
     Platte River; attorney Mark Slater appeared on behalf of defendants Dan Marks and Sarilee

24
     Marks.[1]

25
     /////

26
     /////

27

28        _____
               [1]  Defendant Premier Power Renewable Energy, Inc. has not appeared in this action.

                                                   1

1    I.        Background

2              This action arises out of a performance bond and indemnity contract, that were part of an

3    overall construction project for a roof mounted solar system for a public school district in

4    Colorado.  Defendant Premier Power Renewable Energy, Inc. ("Premier Power"), which is owned

5    by defendants Dean Richards Marks and Sarilee Marks, entered into construction contracts to

6    install the solar system.  The Marks and Premier Power also entered into an agreement with

7    plaintiff for plaintiff to issue performance bonds for which the Marks would hold plaintiff

8    harmless and indemnify plaintiff in the event of any claims on the bonds.  As discussed below,

9    Premier Power allegedly defaulted on its performance obligations on the project and claims were

10   made against the bond.  The Marks allegedly failed to meet their indemnity and hold harmless

11   plaintiff, Platte River Insurance Company ("Platte River"), and plaintiff now brings this action for

12   breach of the indemnity contract.

13             Plaintiff also alleges that certain real property was transferred by the Marks to avoid

14   having those assets available to satisfy any debt owe to plaintiff.  Based on that allegation,

15   plaintiff seeks prejudgment remedies of a writ of attachment and/or a temporary protective order

16   to prevent the Marks from transferring any other assets pending either the resolution of this case

17   or the determination of whether particular assets are exempt from attachment or execution to

18   satisfy plaintiff's claim.

19        A.        Plaintiff's Complaint

20             Plaintiff, Platte River, commenced this against Premier Power, Dean Richards Marks, and

21   Sarilee Marks, alleging claims for (1) breach of written indemnity agreement, (2) specific

22   performance, (3) injunctive relief, and (4) Quia Timet.  ECF No. 1.  The complaint alleges that on

23   March 3, 2009, Premier Power entered into a General Indemnity Agreement ("Agreement") in

24   favor of Platte River, as an inducement and partial consideration for Platte River issuing surety

25   bonds on behalf of Premier Power.  *Id*. ¶ 10.  It further alleges that on November 4, 2010, Dean

26   Marks and Sarilee Marks entered into a General Indemnity Agreement Addendum for Additional

27   Indemnitor in favor of Platte River, as an inducement and partial consideration for Platte River

28   /////

1    issuing surety bonds on behalf of Premier Power. *Id.* ¶ 11.  That same date Platte River issued the

2    performance bonds.   *Id.*

3        Thereafter, Premier Power entered into a construction contract known as "3020kWp-DC

4    Roof Mount, Solar Roof System" in Douglas County, Colorado, *id.* ¶ 13, and Platte River

5    executed a Performance and Payment Bonds (collectively, "the Bonds") for certain performance

6    and payment obligations under it.  *Id.* ¶ 14.  Various claimants under the Bonds have alleged that

7    Premier Power defaulted on its performance and payment obligations which were secured by the

8    Bonds.[2]  Pursuant to the indemnity agreement with the Marks, Platte River requested defendants

9    to indemnify it for the claims made against the Bonds, but they failed to do so.  *Id.* ¶ 15.  As a

10   result, Platte River has incurred liabilities in excess of $1,011,121.60.  *Id.* ¶ 21.

11       The Marks have failed to indemnify, provide a defense, or otherwise hold harmless the

12   plaintiff.  *Id.* ¶¶ 16-21.

13       B.    Procedural History

14       Platte River filed the instant motion for writ of attachment or, in the alternative, for a

15   temporary protective order, which came before the court for hearing on December 10, 2014.  ECF

16   Nos. 18, 26.  After that hearing, the court set the matter for further hearing on February 18, 2015,

17   and directed the parties to submit further briefing identifying the specific property allegedly

18   subject to attachment and whether such property is subject to attachment under the applicable

19   legal standard.  ECF Nos. 29, 31.  After the February 18 hearing, the court took the matter under

20   submission.  However, defendants Dean Marks and Sarilee Marks subsequently filed a voluntary

21   Chapter 13 Bankruptcy Petition, resulting in an automatic stay of this action.  *See* 11 U.S.C.

22   § 362(a); ECF No. 36.  On June 29, 2015, the parties filed a joint status report, which indicated

23   that defendants' bankruptcy case was dismissed on June 1, 2015.

24   /////

25   ───────────────────

26       [2] As discussed below, Premier Power allegedly failed to pay a subcontractor for
     constructing the project and, ultimately, an arbitration award was issued on October 2, 2014, in
27   favor of the subcontractor and against Premier Power for the amount of $2,996,059.44.  The
     arbitrator found that the subcontractor had met all of its performance obligations and that Premier
28   Power was in breach of its obligations to make payment on the subcontract.

1   II.     Motion for Writ of Attachment

2           A.     Legal Standard

3       A plaintiff in federal court is entitled to every remedy that is available under the law of the

4   state where the court is located for "seizing a person or property to secure satisfaction of the

5   potential judgment," including a writ of attachment.  Fed. R. Civ. P. 64; *Reebok Int'l Ltd. v.*

6   *Marnatech Enters., Inc.*, 970 F.2d 552, 558 (9th Cir. 1992).  The procedures and grounds for

7   obtaining a prejudgment writ of attachment are governed by California Code of Civil Procedure

8   sections 481.010-493.060.

9       "Attachment . . . is a remedy by which a plaintiff with a contractual claim to money (not a

10  claim to a specific item of property) may have various items of a defendant's property seized

11  before judgment and held by a levying officer for execution after judgment."  *Waffer Int'l. Corp*

12  *v. Khorsandi*, 69 Cal. App. 4th 1261, 1271 (1999) (parenthetical in original and emphasis

13  omitted).  "Attachment is a harsh remedy because it causes the defendant to lose control of his

14  property before the plaintiff's claim is adjudicated.  *Martin v. Aboyan*, 148 Cal. App. 3d 826, 831

15  (1983).  "Therefore, the requirements for the issuance of a writ of attachment are strictly

16  construed against the application."  *Blastrac, N.A. v. Concrete Solutions & Supply*, 678 F. Supp.

17  2d. 1001, 1004 (C.D. Cal. 2010).  Furthermore, "[t]he moving party has the burden of

18  establishing grounds for an attachment order."  *VFS Fin., Inc. v. CHF Express, LLC*, 620 F. Supp.

19  2d 1092, 1095 (C.D. Cal. 2009).

20      A court may issue an attachment "in an action on a claim or claims for money, each of

21  which is based upon a contract, express or implied, where the total amount of the claim or claims

22  is a fixed or readily ascertainable amount not less than five hundred dollars . . . ."  Cal. Civ. Proc.

23  Code § 483.010 (a).  Furthermore, where the defendant is a natural person, an attachment may

24  issue "only on a claim which arises out of the conduct by the defendant of a trade, business, or

25  profession."  Cal. Civ. Proc. Code § 483.010 (b).  A plaintiff seeking a writ of attachment must

26  submit an affidavit demonstrating that "[t]he plaintiff on the facts presented would be entitled to a

27  judgment on the claim upon which the application is based," and "that the property sought to be

28  /////

attached is not exempt from attachment."  Cal. Civ. Proc. Code § 485.210(c)(1), (3).  The court

shall issue the writ of attachment if it finds that:

> (1) The claim upon which the attachment is based is one upon which an attachment may be issued.
>
> (2) The plaintiff has established the probable validity of the claim upon which the attachment is based.
>
> (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
>
> (4) The amount to be secured by the attachment is greater than zero.

Cal. Civ. Proc. Code § 484.90(a).  Furthermore, before a court may issue a writ of attachment,

"the plaintiff shall file an undertaking to pay the defendant any amount the defendant may recover

for any wrongful attachment by the plaintiff in the action."  Cal. Civ. Proc. Code § 489.210.  The

presumptive amount of the undertaking under the statute is $10,000, but that amount may be

increased on a showing that the probable recovery for a wrongful attachment would be greater.

Cal. Civ. Proc. Code § 489.220.

B.    Platte River has satisfied section 484.90(a)

A claim upon which an attachment may issue is defined by California Code of Civil

Procedure Section 483.010(a).  That section requires the following three requirements be met: (1)

claim for money; (2) based upon express or implied contract; and (3) the amount of the claim is

readily ascertainable and is not less than $500 exclusive of costs, interest, and attorney's fees.

Cal. Civ. Proc. Code § 483.010(a).

Platte River seeks collateral security for its ongoing exposure under the Bonds, as well as

attorneys' fees in enforcing the instant action—conservatively estimated at $200,000—for a total

attachment amount of $1,221,121.60.  Platte River's claim for breach of the indemnification

agreement specifically alleges that it asked defendants to indemnify it pursuant to the Agreement

for the claims made against the Bonds, but they failed to do so.  Platte River's action seeks to

obtain cash or collateral in the amount of $1,011,121.60 for the claims made against the Bonds.

Compl. ¶ 19.  This type of action constitutes a claim for money.  *See Travelers Cas. And Sur. Co.*

*of America v. J.K. Merz Const., Inc.*, 2007 WL 4468680, at * 5-6 (N.D. Cal. Dec. 17, 2007)

1   (finding that plaintiff's action for collateral under an indemnity contract was not for a specific

2   piece of property, but rather one for "payment of money by the defendant should certain

3   developments occur, i.e., should a claim or demand be made on [the plaintiff] under the subject

4   bonds.").  Indeed, Platte River does not claim a right to any specific piece of property.

5         Second, the claim is based on the indemnity agreement between the parties, and therefore

6   arises out of a contract.  Third, the amount claimed is readily ascertainable and is not less than

7   $500.  Platte River submits the declaration of Ron Wills, Senior Bond Claims Specialist for Platte

8   River, which shows that at defendants request Platte River executed the Bonds in connection with

9   the Construction Contract.  ECF No. 18-2 ¶ 12.  The Bonds were both in the amount of

10  $1,011,121.60.  *Id*.  Further, there does not appear to be any dispute that Premier Power entered

11  into a Subcontract with Power Partners MasTec, LLC ("PPM"), whereby PPM was to provide

12  certain labor, materials, and equipment and services in connection with the Construction Contract.

13  *Id*. ¶ 13.  PPM completed its work and asserted a claim against the Payment Bond in excess of

14  $1.6 million, alleging that Premier Power defaulted on its payment obligations under the

15  Subcontract.  *Id*. ¶ 14.  The dispute over the claim eventually went to arbitration and on October

16  2, 2014, a final award was issued in the arbitration in favor of PPM and against Premier Power,

17  awarding $1,964,419.56 in damages, $707,191.04 in interest, and $324,448.84 in attorney's fees,

18  expenses and costs, for a total award of $2,996,059.44.  *Id*. ¶ 18.  Platte River is bound by the

19  judgment obtained by PPM against Premier up to the amount of $1,011.121.60 under the

20  Payment Bond.  *Id*. ¶19.  Pursuant to Section 8 of the Agreement, Platte River requested in

21  writing that defendants deposit cash or collateral with Platte River to cover the $1,011,121.60, but

22  defendants failed to do so.  *Id*. ¶¶ 19, 20.  Based on these facts, the court is able to ascertain the

23  amount owed under the agreement is $1,011,121.60.

24        Defendants argue, however, that Platte River's request to attach property to secure

25  payment for an estimated $200,000 in attorneys' fees should be denied because Platte River has

26  failed to provide any admissible factual evidence to establish this figure.  ECF No. 22 at 3-4; ECF

27  No. 33 at 6.  Although the amount under the claim must be ready ascertainable, a party need only

28  provide an estimate of any costs and attorney's fees it seeks to include in the amount to be

1   secured by the writ of attachment.  *See* Cal. Civ. Proc. Code § 482.110(a) (a "plaintiff's

2   application for a right to attach order and a writ of attachment pursuant to this title may include an

3   estimate of the costs and allowable attorney's fees."); Cal. Civ. Proc. Code § 482.110(b) ("In the

4   discretion of the court, the amount to be secured by the attachment may include an estimate

5   amount for costs and allowable attorney's fees.").  The supplemental declaration of Ron Wills

6   provides that Platte River has already paid $83,585.33 in attorneys' fees.  ECF No. 27-2 ¶ 7.  He

7   further states that Platte River anticipates that additional fees to take this matter through trial will

8   likely exceed $100,000.  *Id*. ¶ 8.  He also states that due to the complexity of this case, including

9   an issue regarding an alleged fraudulent transfer of property, attorney's fees could easily exceed

10  $200,000.  *Id*. ¶ 10.

11          However, Platte River's math does not add up.  Even assuming that it will take $100,000

12  to take this action to trial, after including the $83,585.33 in fees already paid, the estimated total

13  would be $183,585.33 in fees.  Platte River does not explain the approximately $16,500 it added

14  to reach the estimated total of $200,000.  Further, while it will certainly incur more litigation

15  expenses, Platte River provides no explanation for how it determined that it would take an

16  additional $100,000 to take this matter to trial.  Without further elaboration, it simply provides the

17  unsupported statements of Mr. Wills, a Senior Bond Claims Specialist for Platte River, that it will

18  take $100,000 to litigate this matter.  Mr. Wills does not purport to be a litigator, or even an

19  attorney, and there is no indication that he has specialized knowledge or experience that would

20  permit him to estimate the cost of litigating this action (or any other action for that matter).[3]

21  Accordingly, the court finds that Platte River has failed to demonstrate that it will incur an

22  additional $100,000 in attorney fees.  Without supporting evidence, the amount of fees therefore

23  must be limited to the $83,585.33 that Platte River has already paid in attorneys' fees.

24          Platte River has also established the probable validity of its claim.  A plaintiff has

25  established the probable validity requirement "where it is more likely than not that the plaintiff

26  will obtain a judgment against the defendant on the claim."  Cal. Civ. Proc. Code § 481.190.  The

27

28          [3]  If he does have such knowledge or experience, it is not apparent from his declaration.

1   record shows that on March 3, 2009, Premier Power entered into an Indemnity Agreement in

2   favor of Platte River, as an inducement and partial consideration for Platte River issuing surety

3   bonds on behalf of Premier Power.  Wills Decl. ¶ 8, Ex. 1.  On or about November 4, 2010, Dean

4   Marks and Sarilee Marks entered into the General Indemnity Agreement Addendum for

5   Additional Indemnitor ("the Addendum") in favor of Platte River, as an inducement and partial

6   consideration for Platte River issuing surety bonds on behalf of Premier Power.  *Id.* ¶ 9, Ex. 2.

7   Platte River received a claim against the Payment Bond by Power Partners MasTec, LLC in the

8   amount of $1,011,121.60.  *Id.* ¶ 19.  Pursuant to the Indemnity Agreement, defendants were

9   required to defend, indemnify, and hold harmless Platte River from all claims against the Bonds,

10  but failed to do so.  *Id.* ¶ 23, Ex. 1.  Under the agreement, defendants were required to deposit

11  cash or collateral in the amount of the claim, but failed to do so.  *Id.*

12       Defendants do not dispute that they breached the indemnity agreement.  Nor do they

13  contend that Platte River is not likely to prevail on its claim.  Instead, at the hearing defendants

14  argued that Platte River has not established probable validity because it has yet to make any

15  payments on the Bonds.  Platte River conceded that it has yet to make any payments to any of the

16  claims on the Bonds, but argues that it need not first pay a claim to establish probable validity.

17  Rather, Platte River argues, under the Indemnity Agreement it is entitled to the collateral upon

18  making a demand, and failure to provide collateral is a breach of the agreement.

19       Indeed, the Indemnity Agreement provides that if Platte River deems "it necessary to set

20  up a reserve in any amount to cover any claim [or] demand . . . under or on any Bond(s) or for

21  any other reason whatsoever, [defendants] will immediately upon demand deposit with [Platte

22  River] an amount of money or collateral in an amount sufficient to cover such reserve and any

23  increase thereof, or for any payment or compromise of any liability, claims, demands, judgment,

24  damages, fees and distribution or other expenses."  ECF No. 18-2 at 10.  Thus, the Indemnity

25  Agreement expressly requires defendants to provide collateral upon a demand from Platte River,

26  and does not require Platte River to make a payment on a claim prior to making such a demand.

27  Accordingly, the court finds that Platte River has established the probable validity of the claim

28  upon which the attachment is based.

8

1    Furthermore, Ron Wills's declaration provides that Platte River seeks to attach

2    $1,221,121.60 worth of defendants' property and seeks attachment for no purpose other than the

3    recovery on Platte River's claims upon which the attachment is based.  Accordingly, Platte River

4    has satisfied the remaining requirements of Cal. Civ. Proc. Code § 484.90(a).

5    As the writ seeks to attach assets of the individual defendants Dean Marks and Sarilee

6    Marks, Platte River is also required to establish that the claim arises out of a trade or business.

7    *See* Cal. Civ. Proc. Code § 483.010(c) (where the action is against a natural person, the claim

8    must arise out of a trade or business).  Platte River contends that the addendum to the security

9    agreement demonstrates that the individual defendants entered into the agreement for a business

10   purpose.  ECF No. 18-1 at 11.  The addendum specifically states that Richard Marks and Sarilee

11   Marks have a beneficial interest in the bonds.  ECF No. 18-2 at 19.  Furthermore, defendants do

12   not dispute that the claims arise out of their trade or business.  Thus, Platte River has also

13   satisfied the requirements of Cal. Civ. Proc. Code § 483.010(c).

14   Accordingly, defendants have demonstrated compliance with the California procedures

15   for obtaining a writ of attachment.

16       C.      Exemptions

17   Defendants contend that Platte River is not entitled to the writ because the properties it

18   seeks to attach are exempt from attachment.

19   California Code of Civil Procedure section 484.020 requires an application for a writ of

20   attachment to include, among other things, "[a] description of the property to be attached under

21   the writ of attachment and a statement that the plaintiff is informed and believes that such

22   property is subject to attachment.  Cal. Civ. Proc. Code § 484.020(e).  "Where the defendant is a

23   natural person, the description of property shall be reasonably adequate to permit the defendant to

24   identify the specific property to be attached."  *Id*.

25   "If the defendant claims that the personal property described in the plaintiff's application,

26   or a portion of such property, is exempt from attachment, the defendant shall claim the exemption

27   as provided in this section.  If the defendant fails to make the claim or makes the claim but fails

28   /////

1  to prove that the personal property is exempt, the defendant may not later claim the exemption

2  except as provided in Section 482.100."  Cal. Civ. Proc. Code § 484.070(a).

3          "If the plaintiff desires to oppose the claim of exemption, the plaintiff shall file and serve

4  on the defendant, not less than two days before the date set for the hearing, a notice of opposition

5  to the claim of exemption, accompanied by an affidavit supporting any factual issues raised and

6  points and authorities supporting any legal issues raised."  Cal. Civ. Proc. Code § 484.070(f).  If

7  the plaintiff fails to file the requisite opposition, no writ of attachment shall issue as the property

8  claimed to be exempt.  *Id*.  Where the plaintiff files an opposition to the claim of exemption, "the

9  defendant has the burden of proving that the property is exempt from attachment."  Cal. Civ.

10  Proc. Code § 484.070(g).

11          Platte River's initial motion did not specifically identify what property it is attempting to

12  attach.  For that reason, analysis of any claims of exemption were largely hypothetical and the

13  court ordered Platte River to submit a supplemental brief identifying precisely the property it

14  seeks to attach.  Platte River has filed its supplemental brief, and apart from a generalized

15  discussion of various properties, Platte River still contends that the specific details concerning all

16  of defendants' assets and real property remains unclear.  ECF No. 32 at 2.  Thus, Platte River

17  again requests a generalized attachment order as to defendants' known property and an injunction

18  prohibiting defendants from transferring or encumbering any interest in real property or personal

19  property, with the exception that defendants be permitted to make payments related to ordinary

20  bills, so that Platte River can determine if there is any additional property.  *Id*.

21          Because an assessment must be made as to the exempt or non-exempt status of each asset

22  or category of assets, the court addresses each below.  Further, as explained below, the court finds

23  that Platte River is entitled to a writ of attachment as to some of defendants' known property, but

24  that other known properties are either exempt from attachment or that Platte River has not met its

25  burden on the motion as to them.  Furthermore, the court finds that Platte River is not entitled to

26  the injunction it seeks.

27  /////

28  /////

10

1          1.  Placerville Property/Interest in Eagle Ridge

2          Platte River indicates that it seeks to attach real property located at 2540 Los Cerros

3   Drive, Placerville, California ("Placerville Property").  Platte River contends that this property

4   may be attached pursuant to California Code of Civil Procedure § 487.010(c)(1), which provides

5   that an individual's interest in real property, except leasehold estates with unexpired terms of less

6   than one year, is subject to attachment.  Cal. Civ. Proc. Code § 487.010(c)(1).

7          However, in its supplemental brief, Platte River explains that on September 11, 2012,

8   defendants assigned their interest in the Placerville Property to the Marks Living Trust.  ECF No.

9   32 at 3.  Thereafter, defendants, as trustees of the Marks Living Trust, transferred the Placerville

10  Property to Eagle Ridge, LLC ("Eagle Ridge").  *Id*.  The Marks Living Trust owns 25 percent of

11  Eagle Ridge, with the remainder owned by defendants' children.  *Id*.  Accordingly, Platte River

12  now argues that it is entitled to an order attaching all interest the Marks Living Trust has in Eagle

13  Ridge.  Further, Platte River contends that the transfer of the Placerville Property to Eagle Ridge

14  was fraudulent and is therefore voidable.  *Id*. at 3.  Platte River states that if defendants do not

15  voluntarily unwind the transfer, it will be forced to file a separate action against defendants, the

16  Marks Living Trust, and Eagle Ridge to have the transfer voided.  *Id*.  Once this is completed,

17  title to the Placerville Property will be solely owned by the Marks Living Trust, and Platte River

18  will seek to attach all of the Placerville Property.

19         Thus, Platte River has changed its course.  Although its motion for a writ of attachment

20  seeks to attach real property pursuant to California Code of Civil Procedure § 487.010(c)(1), in its

21  supplemental brief it now essentially argues that it is seeking to attach defendants' interest in

22  Eagle Ridge.  ECF No. at 32 at 3.  California Code of Civil Procedure § 487.010(c) identifies the

23  type of property that is subject to attachment.  That section provides for the attachment of real

24  property, *see* Cal. Civ. Proc. Code § 487.010(c)(1), but does not provide that an individual's

25  interest in a Limited Liability Company is subject to attachment.

26         Platte River argued for the first time at the hearing that defendants' interest in Eagle Ridge

27  would be subject to attachment as a security under section 487.010(c)(10).  However, Platte River

28  fails to cite authority in support of its contention that an interest in an LLC constitutes a security

11

1   for purposes of section 487.010(c).  In any event, Platte River's motion only sought to attach the

2   Placerville Property, and did not seek to attach defendants' interest in Eagle Ridge.  As such, its

3   last minute attempt to seek attachment of defendants' interest in Eagle Ridge must be rejected for

4   failure to provide sufficient notice of the property it seeks to attach.  Cal. Civ. Proc. Code

5   § 484.020 (requiring an application for a writ of attachment to include, among other things, "[a]

6   description of the property to be attached under the writ of attachment and a statement that the

7   plaintiff is informed and believes that such property is subject to attachment."); *see also* Cal. Civ.

8   Proc. Code § 484.020(e) ("Where the defendant is a natural person, the description of property

9   shall be reasonably adequate to permit the defendant to identify the specific property to be

10  attached.").  Accordingly, Platte River has failed to demonstrate that it is entitled to a writ of

11  attachment as to defendants' interest in Eagle Ridge, and therefore its motion should be denied as

12  to this property.[4]

2.   Accounts Receivable, Chattel, and General Intangibles from Defendants'
Trade, Business or Possession

15       Platte River also requests an order attaching two separate accounts, which it contends may

16  contain proceeds from the sale of Premier Power stock: (1) Fidelity Individual Investment

17  Account ending in 312 in the name of Dean and Sarilee Marks, and (2) Fidelity Individual

18  Investment Account ending in 155 in the name of Dean Marks.  ECF No. 32 at 5.  It contends that

19  such property is subject to attachment pursuant to California Code of Civil Procedure

20  § 487.010(c)(2).  That section provides that "[a]ccounts receivable, chattel paper, and general

21  intangibles arising out of the conduct by the defendant of a trade, business, or profession, except

22  any such individual claim with a principal balance of less than one hundred fifty dollars" is

23  subject to attachment.  Cal. Civ. Proc. Code § 487.010(c)(2).

24  /////

25       [4]  Court records reflect that on August 18, 2015, Platte River filed a complaint against
26  defendants, the Marks Living Trust, and Eagle Ridge, seeking to avoid the alleged fraudulent
transfer of the Placerville Property to Eagle Ridge.  *Platte River Ins. Co. v. Marks*, 2:15-cv-1747-
27  WBS-EFB, ECF No. 1.  Should Platte River succeed in that action, it may be able to seek
attachment of the Placerville Property in this action.  However, that issue is not currently before
28  the court and therefore need not be decided at this time.

Platte River contends that in September 2008, Dean Marks was issued a stock-certificate for 12,488,056 shares of common stock in Premier Power.  ECF No. 32 at 4.  According to a Sale and Purchase Agreement produced by defendants, in July 2012, Dean Marks sold 10,746,365 shares of that stock for $973,800.  Curran Decl. ¶ 9.  Therefore, Platte River requests an order attaching the $973,800 to the extent it has not been paid.  Platte River further states that defendants have produced statements from their Fidelity Investment accounts which show that as of November 2014, defendants "jointly own 3,000,000 shares of Premier Power stock, and Dean Marks individually own [sic] $2,550,000 [sic]."  ECF No. 32 at 4.  Therefore, Platte River seeks an order attaching the Fidelity Individual Investment Account ending in 312 and in 115.  Defendants' pleadings do not address Platte River's argument to attach the $973,800 or the Fidelity Individual Investment Accounts ending in 312 and 115.  Accordingly, Platte River's request to attach this property is unopposed.

The investment accounts purport to contain stock that arises out of defendants' trade, business, or profession.  Accordingly, the accounts are subject to attachment pursuant to California Code of Civil Procedure § 487.010(c)(2).  As defendants do not claim that this property is exempt, Platte River is entitled to a writ of attachment as to the Fidelity Individual Accounts ending in 312 and 115.

Defendants' request for an order attaching the $973,800 is more problematic.  While the money does arise out of the sale of Premier Power stock and is therefore subject to attachment pursuant to California Code of Civil Procedure § 487.010(c)(2), it is unclear where the money is located, or whether defendants even still have possession of this money.  Without the location of money, the court is unable to issue an order having the property "seized before judgment and held by a levying officer for execution after judgment."  *See Waffer Int'l. Corp.*, 69 Cal. App. 4th at 1271.  Accordingly, the motion should be denied without prejudice to the $973,800.

3. Deposit Accounts

Platte River also seeks to attach all but the first $1,000 of defendants' individual deposit account ending in account number 172, at U.S. Bank pursuant to California Code of Civil Procedure § 487.010(c)(7).  ECF No. 32 at 5.  That section provides:

13

> Money on the premises where a trade, business, or profession is conducted by the defendant and, except for the first one thousand dollars ($1,000), money located elsewhere than on such premises and deposit accounts, but, if the defendant has more than one deposit account or has at least one deposit account and money located elsewhere than on the premises where a trade, business, or profession is conducted by the defendant, the court, upon application of the plaintiff, may order that the writ of attachment be levied so that an aggregate amount of one thousand dollars ($1,000) in the form of such money and in such accounts remains free of levy.

Cal. Civ. Proc. Code § 487.010(c)(7).

Defendants argue that this account holds earnings from Sarilee Marks's employment with the El Dorado Community Health Center in Placerville, which are exempt pursuant to California Code of Civil Procedure §§ 487.020(c) and 706.011. ECF No. 33 at 5. Platte River concedes that earnings are exempt from attachment. ECF No. 34 at 4. Accordingly, the court finds that the individual deposit account ending in account number 172 at U.S. Bank is exempt and not subject to attachment. Accordingly, the motion must be denied as to this property.[5]

### 4   Loan Instruments

Platte River also seeks to attach any amount payable under a loan made by Dean Marks to Premier Power. ECF No. 32 at 5-6. According to Platte River, Dean Mark entered into three separate loan agreements with Premier Power, totaling $400,000. ECF No. 32-1 ¶ 13. The loan repayment term under each agreement is "at the request of the lender." *Id*. Defendants have not produced any documents evidencing that these loans have been repaid. *Id*.

California Code of Civil Procedure § 487.010(c)(8) provides that instruments are subject to attachment. An instrument is defined as "a negotiable instrument of any other writing that evidences a right to the payment of monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment." Cal. Comm. Code § 9102(a)(47).

---

[5]  At the hearing, Platte River argued that it is unable to discern whether the account only contains Ms. Marks's earnings because defendants have failed to adequately respond to Platte River's discovery requests. Platte River, however, has not filed a motion to compel discovery, or for discovery sanctions and there is no evidence before the court indicating that the account at issue contains monies that are not exempt.

14

1    Accordingly, Dean Marks's right to receive payment for a loan made to Premier Power is

2    subject to attachment pursuant to California Code of Civil Procedure § 487.010(c)(8).

3    Furthermore, defendants do not contend that such property is exempt.  Accordingly, Platte

4    River's motion as to this property must be granted.

5                                5.  Securities Accounts

6    Platte River seeks to attach multiple brokerage and investment accounts pursuant to

7    California Code of Civil Procedure § 487.010(c)(10), which provides that securities are subject to

8    attachment.  Platte River states that defendants have the following accounts which may be subject

9    to attachment:

10    1.    Fidelity Education Account ending in 061 in the name of Dean Marks, as

11          participant and Richard H. Marks, as beneficiary.

12    2.    Fidelity Rollover IRA Account ending in 219 in the name of Sarilee Marks.

13    3.    Fidelity Rollover IRA Account ending in 254 in the name of Dean Marks.

14    4.    Fidelity Individual IRA Account ending in 990 in the name of Dean Marks.

15    5.    Vanguard Retirement Savings Plan ending in 658 in the name of Dean Marks

16    As for the education account ending in 061 in the name of Dean Marks, defendants do not

17    contend that it is exempt, and therefore court finds that it is subject to attachment.[6]

18    As for the remaining accounts (accounts ending in 219, 254, 658, 990), defendants argue

19    that these accounts are retirement accounts and are therefore not subject to attachment.  ECF No.

20    33 at 6.  Platte River does not dispute that any validly-funded retirement account would be

21    exempt from attachment.  ECF No. 32 at 6.  It only claims that defendants have not provided it

22    with sufficient documents to determine whether the retirement accounts were properly funded.

23    /////

24    /////

25

26    [6]   At the February 18 hearing, defendants' counsel requested additional time to conduct
      research as to whether education accounts are exempt from attachment.  Notwithstanding the fact
27    that the motion was before the court for further hearing and the parties had already submitted
      supplemental briefs, the court entertained the request and permitted defendants' to file a one-page
28    brief by the end of the day.  No brief was filed.

                                            15

1  *Id.* "Therefore, Platte River reserves the right to seek an attachment of any retirement accounts,

2  including but not limited to any accounts listed above, to the extent those accounts were not

3  properly funded."[7]  *Id.*

4      Based on the evidence currently before the court, it cannot be determined that these

5  accounts are not subject to attachment and the motion must be denied, without prejudice, as to

6  these accounts.  Should Platte River discover evidence demonstrating that the accounts are not

7  properly-funded retirement accounts, it may renew its motion as to these accounts.

8      D.  <u>Temporary Protective Order</u>

9      Platte River argues that it is entitled to a Temporary Protective Order to protect its rights

10  under the Indemnity Agreement, which provides that defendants agreed to assign, transfer, and

11  convey all their rights, title, interests and estate in and to all of their property to Platte River.  ECF

12  No. 32 at 7.  It contends that the assignment provision in the Indemnity Agreement is broad

13  enough to support Platte River's request for a right to attach order against all of Defendants'

14  property located in California, as well as a temporary restraining order prohibiting defendants

15  from disposing of any other property located outside of California.  *Id.*

16      Platte River further explains that it has already served discovery requests on defendants to

17  determine their assets.  ECF No. 32 at 2.  Defendants have refused to provide complete responses

18  to Platte River's discovery requests, and Platte River intends to bring a motion to compel

19  responses to its discovery request.  *Id.*  Specifically, defendants have refused to produce their tax

20  returns, a complete copy of the Marks Family Trust, and information regarding the $973,800

21  received for the sale of Dean Marks' sale of stock in Premier Power.  *Id.*

22      Accordingly, Platte River requests that the court issue an order prohibiting defendants

23  from transferring, encumbering, refinancing or otherwise dissipating any of their assets until

24  Platte River can complete discovery, determine the location of defendants' property, determine

25  what property is subject to attachment, enforce any order issued by the court, and pursue any

26  other remedies necessary to protect its rights.  *Id.*

27

28  [7]  Again, Platte River has not moved to compel further responses to its discovery requests.

1   "California law allows a creditor to obtain a TPO against a debtor's property after it has

2   been shown in an ex-parte proceeding the probable validity of its claim and the probability of

3   great harm if relief is not granted." *In re Wind Power Systems, Inc.*, 841 F.2d 288, 291 (9th Cir.

4   1988).  California Code of Civil Procedure section 486.010 provides that "[a]t the time of

5   applying for a right to attach order under Chapter 4 . . . , the plaintiff may apply pursuant to this

6   chapter for a temporary protective order by filing an application for the order with the court in

7   which the action is brought.  Cal. Civ. Proc. Code § 486.010(a).  That section further provides

8   that "[t]he application shall state what relief is requested and shall be supported by an affidavit,

9   which may be based on information and belief, showing that the plaintiff would suffer great or

10  irreparable injury . . . if the temporary protective order were not issued.  Cal. Civ. Proc. Code

11  § 486.010(b).

12      After obtaining a TPO, a creditor can then "obtain an order to attach and a writ of

13  attachment after notice and a full hearing." *In re Wind Power Systems, Inc.*, 847 F.2d at 291.  A

14  TPO shall expire at the earliest of the following: (1) forty days from its issuance, (2) a period of

15  less than 40 days if ordered by the court, or (3) when a levy of attachment upon the property is

16  made by the plaintiff.  "The attachment statutes are given strict construction."  *See Rose v.*

17  *Abraham*, No. CIV F 08-606 AWI SMS, 2008 WL 2275573, at * 3 (E.D. Cal. May 21, 2008).

18      Platte River seeks a TPO to provide it with an opportunity to conduct further discovery

19  into whether defendants possess additional property that may be subject to attachment.  It is clear,

20  however, that the purpose of a TPO is to provide a temporary injunction until the court has had

21  the opportunity to conduct a full hearing on plaintiff's application for a writ of attachment.  *See In*

22  *re Wind Power Systems, Inc.*, 847 F.2d at 291; *Rose*, 2008 WL 2275573, at * 3.  Platte River does

23  not seek a TPO for this purpose.  Instead, it is seeks an injunction to prevent defendants from

24  hiding assets while it conducts additional discovery into what other assets may be subject to

25  attachment.  Platte River is not entitled a TPO for this purpose.  Accordingly, Platte River's

26  request for a TPO must be denied.

27  /////

28  /////

17

1    IV.    Conclusion

2          Accordingly, it is hereby ORDERED that Platte River submit a proposed right to attach

3    order and a proposed writ of attachment for issuance by the clerk, consistent with the

4    recommendations above, within fourteen days of the date of these findings and recommendations.

5           Further, it is hereby RECOMMENDED that:

6          1.  Platte River's motion for a writ of attachment be granted in part as detailed above.

7          2.  The Clerk be directed, after Platte River files a $10,000 undertaking,[8] to issue a writ

8    that would attach only to the property subject to attachment as set forth above, and, within that

9    list, only such property as is necessary to secure an obligation in the amount of $1,094,706.93

10   ($1,011,121.60 for claims made on the Bonds and $83,585.33 for attorneys' fees).

11         These findings and recommendations are submitted to the United States District Judge

12   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

13   after being served with these findings and recommendations, any party may file written

14   objections with the court and serve a copy on all parties.  Such a document should be captioned

15   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

16   within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

17   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

18   DATED:  September 17, 2015.

19

20                                    EDMUND F. BRENNAN
                                      UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28
          [8]  The parties' briefs do not address the requirement that Platte River file an undertaking,
     and therefore the court finds the statutory presumed amount of $10,000 appropriate.